UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAOUROU BIZOUNOUYA,

              Plaintiff,

-against-

CNA INSURANCE COMPANY; ALLSTATE INSURANCE COMPANY; MR. WALTER F. CIACCI, LLP,

              Defendants.

1:24-CV-5505 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Daourou Bizounouya, who is appearing *pro se*, filed this action seeking damages and injunctive relief. He sues: (1) CNA Insurance Company ("CNA"); (2) the Allstate Insurance Company ("Allstate"); and (3) Walter F. Ciacci, LLP, the law firm that previously represented him in his state court litigation against CNA and Allstate. By order dated July 23, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] For the reasons set forth in this order, the Court dismisses the action for lack of subject matter jurisdiction.

**STANDARD OF REVIEW**

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

---

[1] Under Rule 5.2 of the Federal Rules of Civil Procedure, court submissions that refer to a minor child may only do so by using the child's name's initials, and to a financial account number by only using the last four digits of a financial account number. *See* Fed. R. Civ. P. 5.2(a)(3), (4). Plaintiff's complaint refers to multiple financial account numbers of accounts belonging to entities other than Plaintiff, and his IFP application refers to the full names of what appear to be minor children. For those reasons, in an abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to the Plaintiff's complaint and IFP application to a "case participant-only" basis.

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

Plaintiff's 269-page complaint commencing this action can be summarized as a collective description of Plaintiff's dissatisfaction with the results of, and with his former law firm's representation of him with respect to, his previous state court litigation and arbitration as to state law claims against CNA and Allstate. Those claims originated from a June 5, 2007 incident in which he was struck by a vehicle at the Manhattan Bridge Car Wash, where he used to work, but it is disputed as to whether he was working at the time he was struck by the vehicle.

Plaintiff asserts the following:

**FIRST,** Defendants knowingly made a materially false, that Plaintiff, receive a settlement funds, from defendants CNA Insurance Company in 2010.
**SECOND,** Defendants made false statement voluntarily and intentionally; said that EIP/ Applicant was injured during his employment as a worker at Manhattan Bridge Car Wash Inc. In general, /blanket denial dated November 14, 2008, and
**THIRD,** [CNA, Allstate,] and Hon, Wilma Guzman, violated the federal law, obstruction of justice, knowingly and willfully made a false statement, about Hon, Donald A. Miles order dated December 29, 2020, which denied defendants motion . . . for dismissal, entered on January 06, 2021.
**Fourth,** [CNA, Allstate,] and my former attorney, Mr. Walter F. Ciacci willfully made a false statement, obstruction, or impede in trial court, Appellate Division First Department, the New York State Department of Financial Services, the Attorney Grievance Committee, the Departmental Disciplinary Committee, and AAA arbitration.

> Violation of federal law obstruction of justice, which are penalize under 18 U.S.C. 1621 and 18 U.S.C. 1505. [*sic*]

(ECF 1, at 2) (citation omitted, emphasis in original).

In his complaint, in addition to damages, Plaintiff seeks: (1) "proof of settlement fund to [him] in 2010"; (2) "proof of $250,000.00 payment to [him] by the defendant"; (3) the "accident police report"; (4) "proof of [the] first denial date November 14, 2008, from the defendant two [*sic*]"; (5) his "employment documents, and work shift"; and (6) his "whole file from [his] former attorney." (*Id.* at 1-2, 20.)

Plaintiff has attached to his complaint, among other attachments, a copy of an August 25, 2022 Decision/Order of the New York Supreme Court, Bronx County ("the state court"), issued by Justice Wilma Guzman of that court in *Bizounouya v. Allstate Ins. Co.*, Index No. 300082/2019. In that state court matter, Plaintiff, who was appearing *pro se*, moved for default judgments against Allstate and CNA, and Allstate cross-moved for dismissal of that matter as frivolous, for sanctions, costs, and fees, and for an order enjoining Plaintiff from further *pro se* litigation relating to the claims underlying that matter without that court's leave. (*Id.* at 65-79, 239-53.)

In that Decision/Order, Justice Guzman detailed Plaintiff's history in the state courts and in arbitration as to his claims against Allstate, CNA, and against the attorney who represented him in those proceedings, Walter F. Ciacci, Esq. According to Justice Guzman, Plaintiff's state court personal injury actions against, among other parties, CNA and Manhattan Bridge Car Wash, settled and were discontinued in May 2012, resulting in Plaintiff being paid $225,000. Plaintiff's subsequent efforts to get compliance with subpoenas or seek a contempt sanction were dismissed by that court on May 16, 2012, noting the abovementioned settlement.

Plaintiff also commenced related arbitration proceedings *pro se* with regard to no fault benefits and his employment status; it seems that one arbitration proceeding was dismissed without prejudice on April 22, 2013, and another was dismissed on February 15, 2018, as time-barred. Around November 2016, Plaintiff brought a *pro se* state court action against Ciacci, which was dismissed on January 24, 2017, as time-barred.

In July 2019, Plaintiff brought yet another *pro se* action against Allstate and CNA.[2] In September 2019, Plaintiff filed a motion for default judgment in that action against Allstate. The state court denied that motion, on December 29, 2020, as moot on the state law grounds of issue preclusion and *res judicata*. Also, in September 2019, CNA moved for dismissal; the state court also denied that motion, on December 29, 2020, as moot because "further action of the court was precluded by issue preclusion and res judicata." (ECF 1, at 69, 243.) On that same date, December 29, 2020, the state court denied Plaintiff's October 2019 requests to file his responses to Allstate's and CNA's motions late as moot because of the court's other decisions that the action was moot due to state law grounds of issue preclusion and *res judicata*. In addition, Justice Guzman, in her August 25, 2022 Decision/Order, took judicial notice of the state court's three previous orders finding that further action of that court was precluded by state law grounds of issue preclusion and *res judicata*.

In February 2020, Plaintiff moved in the state court *pro se* to restore his 2008 settled state court action to that court's calendar, remove Ciacci as his counsel, and compel Ciacci to return to him documents. In response, the state court took judicial notice that the matter was settled on

---

[2] It was in that action that Justice Guzman issued her August 25, 2022 Decision/Order in *Bizounouya*, Index No. 300082/2019 (N.Y. Sup. Ct., Bronx Cnty.).

4

May 16, 2012, recognized Plaintiff's motion as an attempt to vacate that settlement, and denied it on procedural grounds, as well as on the merits, pursuant to state law-of-the-case precedent.

In or around January 2021, Plaintiff attempted to commence another arbitration proceeding with the American Arbitration Association; Allstate moved in the state court to permanently stay that arbitration. The state court denied Allstate's petition and stayed the arbitration for only 90 days. Allstate appealed, and the New York Supreme Court, Appellate Division, First Department, reversed the trial court and permanently stayed the arbitration.[3]

On June 14, 2022, Plaintiff, appearing *pro se*, sought an Order to Show Cause in the state court seeking compliance with the preliminary conference in his settled 2008 state court action and compliance with a subpoena issued in the action before Justice Guzman; the state court denied his request for an Order to Show Cause, noting the settlement and disposal of the 2008 state court action and the 2021 denial of Plaintiff's request to restore that action.

In July 2022, Plaintiff brought another request for an Order to Show Cause in the state court, "seeking the case" from Ciacci. (*Id.* at 70, 244.) The state court also denied that request for an Order to Show Cause, noting that the relevant state court action had been settled, that Plaintiff had filed a complaint against Ciacci with the State's Grievance Committee, and that the state court had already denied a previously filed and similar application for relief.

Having recounted Plaintiff's relevant state court litigation and arbitration history, Justice Guzman, in her August 25, 2022 Decision/Order: (1) denied Plaintiff's motion seeking default judgments against Allstate and CNA as moot; (2) granted Allstate's motion to dismiss that action under Section 3211(a)(5) of the New York Civil Practice Law and Rules, with prejudice;

---

[3] *See Allstate Ins. Co. v. Bizounouya*, 195 A.D.3d 511 (1st Dep't 2021) (June 17, 2021 decision of the Appellate Division reversing an Aug. 25, 2020 order of the New York Supreme Court, Bronx County, and ordering arbitration permanently stayed).

(3) enjoined Plaintiff "from filing any future motions and/or orders to show cause in the New York State Court System with respect to the subject matter of [that] action, **without prior written approval of the court**"; (4) enjoined Plaintiff "from filing any future actions in the New York State Court System with respect to the subject matter of [that] action, or any related matters, **without prior written approval of the court**"; and (5) warned Plaintiff that "failure to comply with the **'prior written approval of the court'** requirement of [that] order shall subject [him] to costs, sanctions, and fees . . . for the filing and prosecution of a frivolous lawsuit[], motion[] and/or order[] to show cause."[4] (*Id.* at 79, 253 (emphasis in original).)

## DISCUSSION

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court's subject matter jurisdiction is available only when a "federal question" is presented or, when asserting claims under state law under its diversity jurisdiction, when the plaintiff and defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) (internal quotation marks omitted)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v.*

---

[4] Plaintiff appealed. On October 3, 2023, the Appellate Division, First Department, affirmed that Decision/Order. *Bizounouya v. CNA Ins. Co.*, 220 A.D.3d 404 (1st Dep't 2023).

*Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

**A.      Federal question jurisdiction**

To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under the court's federal question jurisdiction if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Mere invocation of federal question jurisdiction, without any facts demonstrating a federal law claim, does not create federal question jurisdiction. *See Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

By citing federal criminal statutes, Plaintiff seems to seek the federal criminal prosecution of the defendants under the court's federal question jurisdiction. If that is the case, the Court must dismiss those claims for such relief. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v.*

*Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim." (internal quotation marks and citation omitted)).

With respect to any of his remaining claims, to the extent that he asserts any, Plaintiff alleges nothing to suggest that any of them fall under the court's federal question jurisdiction. Rather, it appears that Plaintiff may be attempting to assert claims under state law, under the court's diversity jurisdiction. Thus, to the extent that Plaintiff asserts any remaining claims under the court's federal question jurisdiction, the Court dismisses them for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

**B.      Diversity jurisdiction**

Inasmuch as Plaintiff is asserting claims under state law, under the court's diversity jurisdiction, he has not alleged facts sufficient to establish that jurisdiction. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that he and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he is domiciled, which is defined as the place where the individual "has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* A corporation is, however, a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve

center," usually its main headquarters).[5] In addition, "[a] limited liability partnership inherits the citizenship of all its members." *Golub v. Berdon LLP*, No. 1:19-CV-10309 (JGK), 2023 WL 1993323, at *2 (S.D.N.Y. Feb. 14, 2023) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)).

There is a second component of diversity jurisdiction – the amount in controversy must be in excess of the sum or value of $75,000. *See* § 1332(a). The sum claimed by a plaintiff will control if it is made in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). The Court can dismiss a diversity action for failing to plead that the amount in controversy exceeds the sum or value of $75,000, but only if there is "a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke [diversity] jurisdiction." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see Ochoa v. Interbrew Am., Inc.*, 999 F.2d 626, 629 (2d Cir. 1993) ("[I]n determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in

---

[5] Section 1332(c)(1), also provides, however, that:

> in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of –
> (A) every State and foreign state of which the insured is a citizen; (B) every State and foreign state by which the insurer has been incorporated; and (C) the State or foreign state where the insurer has its principal place of business.

This "proviso is applicable when the insurer stands in the shoes of its legally responsible insured, who would traditionally be a defendant." *Rosa v. Allstate Ins., Co.*, 981 F.2d 669, 675 (2d Cir. 1992) (Section 1332(c)'s term "direct action" refers to "those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." (quoting *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901-02 (9th Cir. 1982) (internal quotation marks omitted))). "[T]he proviso does not affect suits against the insurer based on its independent wrongs: such as actions brought against the insurer either by the insured for failure to pay policy benefits or by an injured third party for the insurer's failure to settle within policy limits or in good faith." *Id.* (footnotes omitted).

a complaint and not the validity of any asserted defenses."). "A plaintiff seeking to invoke diversity jurisdiction 'cannot[,] [however,] meet its burden of proof with mere conclusory allegations of indirect or speculative value.'" *Chavez v. Maker*, No. 1:18-CV-7965 (RA) (GWG), 2019 WL 4926348, at *4 (S.D.N.Y. Oct. 7, 2019) (citation omitted), *report & recommendation adopted sub nom.*, *Chavez v. Wylie*, 2019 WL 6873806 (S.D.N.Y. Dec. 17, 2019), *appeal dismissed*, No. 20-383, 2020 WL 4332758 (2d Cir. May 28, 2020); *Weir v. Cenlar FSB*, No. 7:16-CV-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (reasoning that "the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible" (citation omitted)).

Plaintiff alleges that he resides in the Bronx, New York. He sues what appear to be two corporations (CNA and Allstate) and his former attorney's law firm, which, he indicates, is a limited liability partnership ("Mr. Walter F. Ciacci, LLP"). He does not allege any facts, however, that would indicate those defendants' state citizenships.[6] Thus, Plaintiff does not allege facts showing that the parties are diverse, that is, that no defendant is, like him, for diversity purposes, also a citizen of the State of New York.

In addition, Plaintiff seeks $20,000,000 in damages "[f]or the harm [the defendants allegedly] put [him] through [for] over 17 years," including for the "humiliation, stress, and fear of [his] experience," to "compensate[e] [him] for the emotional impact of the discriminat[ory]

---

[6] Inasmuch as Plaintiff is attempting to asserting a "direct action" against CNA and Allstate, under Section 1332(c)(1), it would appear that those defendants would be considered citizens of the State(s) or foreign state(s) of the insured (the owner of the vehicle that struck him and the owner of Manhattan Bridge Car Wash), those defendants' respective State(s) or foreign state(s) of incorporation, and of the respective State(s) or foreign state(s) where those defendants have their principal places of business. *See* § 1332(c)(1)(A)-(C). As to "Mr. Walter F. Ciacci, LLP," an alleged limited liability partnership (an "LLP"), Plaintiff alleges nothing about the State citizenship of any of its partners.

10

treatment," for "[p]ain and suffering . . . for denying [him] medical treatment," and also "punitive damages [to] punish the wrongdoer[s] and deter similar behavior in the future." (ECF 1, at 20.) Such allegations are, however, speculative and conclusory, especially in light of the settlements that the state courts have recognized that Plaintiff has previously collected from CNA and/or Allstate, which resolved his original state court actions arising from him being struck by a vehicle. Thus, Plaintiff does not allege facts sufficient to show that his claims under state law satisfy the jurisdictional amount for a diversity action – amount in excess of the sum or value of $75,000. *See* § 1332(a).

Accordingly, to the extent that Plaintiff asserts claims under state law, under the court's diversity jurisdiction, the Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

C.     The *Rooker-Feldman* doctrine

This action appears to be, at least in part, an attempt by Plaintiff to overturn the abovementioned final orders or judgments of the state courts, including any that resolved his previous state court litigation via a settlement and any that permanently stayed arbitration. The *Rooker-Feldman* doctrine requires the dismissal of his claims for such relief. Under this doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Id.* at 291. District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the

11

litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (internal quotation marks and citation omitted).

Courts within this Circuit have held that a state court settlement fulfils the abovementioned requirement for a final state court order or judgment. *See, e.g.*, *Amelio v. Houri*, No. 1:22-CV-0975 (DEH) (RWL), 2024 WL 2279198, at *9 (S.D.N.Y. Apr. 4, 2024) ("The first element is satisfied because a settlement agreement may constitute a state court judgment for purposes of *Rooker-Feldman*."), *report & recommendation adopted*, 2024 WL 4182635 (S.D.N.Y. Sept. 13, 2024); *Green v. City of New York*, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006) ("[C]ourts have treated settlement agreements as final judgments for the purpose of the *Rooker-Feldman* doctrine."); *Alliaz Ins. Co. v. Cavagnuolo*, No. 1:03-CV-1636 (HB), 2004 WL 1048243, at *6 (S.D.N.Y. May 7, 2004) ("[A] settlement agreement may constitute a final judgment for the purposes of the *Rooker-Feldman* doctrine."). *But see Sung Cho v. City of New York*, 910 F.3d 639, 647 (2d Cir. 2018) (when "plaintiffs bring claims alleging harm flowing from wrongful conduct leading to settlement terms and do not argue that the state courts committed any error in so-ordering the parties' agreements, the complaint attacks the conduct itself, and the claim does not function as a *de facto* appeal" prohibited by the *Rooker-Feldman* doctrine).

In addition, "[c]ourts in this district have found that the *Rooker-Feldman* doctrine precludes subject matter jurisdiction where the same party moves to compel arbitration in a state court, loses, and subsequently files a petition in federal court to compel arbitration notwithstanding the state court's decision." *1199 SEIU United Healthcare Workers E. v. PSA*

*Cmty. Servs.*, No. 1:20-CV-3611 (JGK), 2022 WL 484861, at *5 (S.D.N.Y. Feb. 16, 2022) (citation omitted). Yet, in an instance in which "a party seeks an injunction from a federal court in aid of arbitration against state court proceedings or litigants *before* the state court has rendered any relevant decision, federal courts generally have subject matter jurisdiction and may grant injunctive relief, even if the state court action was filed first." *Id.* (citations omitted, emphasis in original).

      Plaintiff seems to challenge, at least in part, the validity of the final orders and judgments of the New York Supreme Court, Bronx County, and of the New York Supreme Court, Appellate Division, First Department, with regard to most, if not, all of his litigation in those courts against CNA, Allstate, and against others in connection with the abovementioned incident in which he was struck by a vehicle; such final orders and judgments include: (1) any settlements resolving such claims; (2) the Appellate Division's permanent stay of arbitration as to such claims; and, most notably, (3) Justice Guzman's August 25, 2022 Decision/Order (a) recounting Plaintiff's previous related state court litigation, (b) denying Plaintiff's motion for default judgments against CNA and Allstate, (c) dismissing the underlying state court action, (d) barring Plaintiff from filing any further motion, request for an Order to Show Cause, or civil action in any New York State court arising from the subject matter underlying that action, and (e) warning Plaintiff that failure to comply with those filing injunction requirements would result in him being subject to costs, sanctions, and fees – a Decision/Order that the Appellate Division subsequently affirmed. Accordingly, the Court dismisses such claims, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

**D.     Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reason set forth in this order.

SO ORDERED.

Dated:   October 26, 2024
         New York, New York

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              Chief United States District Judge